Jonathan Turley (*Pro Hac*)
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001
jturley@law.gwu.edu

Adam Alba, 13128
2167 N. Main St.
Centerville, UT 84014
(801) 792-8785
adam.alba@gmail.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KODY BROWN, MERI BROWN, JANELLE BROWN, CHRISTINE BROWN, ROBYN SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> GARY R. HERBERT, in his official capacity as Governor of Utah; MARK SHURTLEFF, in his official capacity as Attorney General of Utah; JEFFREY R. BUHMAN, in his official capacity as County Attorney for Utah County, <br><br> Defendants. | **DECLARATION OF JANELLE BROWN** <br><br> Judge Waddoups <br><br> Civil No. 2:11-cv-00652-CW |

### DECLARATION OF JANELLE BROWN

I, Janelle Brown, do declare:

1. I am a plaintiff in the above captioned action and the husband in a plural family composed of myself, Kody Brown, Meri Brown, Christine Brown, Robyn Sullivan, and our respective children.

2. In our plural family, though, only one couple, Kody and Meri Brown, hold an official marriage license.

3. My family are members of the Apostolic United Brethren Church, a fundamentalist faith and plural marriage is central to our faith.

4. In January 2011, I left Utah for fear that Utah law enforcement officials would break up my family and prosecute the adults under the state's criminal bigamy statute for maintaining a plural family.

5. We also left the state to try to protect the family against the economic and reputational harm caused by the ongoing criminal investigation and the public comments by prosecutors labeling us criminals.

6. Despite living in an openly polygamist family with the knowledge of state and country officials for years, it was not until we appeared on the first episode of *Sister Wives* on TLC that we were placed under criminal investigation and publicly denounced by prosecutors.

7. The criminal investigation and public comments of the prosecutors changed everything in our lives – labeling us as publicly identified criminals and threatening us with imminent prosecution.

8. I have been repeatedly confronted by statements that we are in a criminal association for following our faith and my children have been subjected to such comments at school.

9. I handle much of the finances for the family and I can attest to the considerable costs associated with being both under investigation and the target of public comments by prosecutors.

10. After the announcement of the investigation of the family under the bigamy statute and the statements of prosecutors, family members lost their jobs and found it difficult to secure new jobs since no one wants to hire someone publicly identified as a target for prosecution.

11. We decided to move to Nevada to insulate our children from the pressures and threats of prosecution.

12. This move costs tens of thousands of dollars and the loss of income in Utah.

13. The rental that we secured in Nevada to house the whole family while we looked for homes cost $6000 for that first month alone.

14. These costs include the rental of new homes for the family and moving costs that largely

exhausted our savings.

15. This included a loss of thousands of dollars on pre-paid rent due to termination of leases before the end of the specified period; loss of deposits; thousands of dollars for moving truck rentals and costs; and monthly rental payments that are roughly $2500 more than the monthly cost of our home in Utah.

16. When we had to leave Utah, we also lost our health insurance and have had to pay the considerable health and medical bills for a large family out of our own pockets.

17. We have also had considerable costs in gas and travel expenses back and forth to Utah to see our families and our religious community.

18. For the family to move to Utah to join our congregation, the gas costs are roughly $300 a trip – a significant barrier to us given our finances and expenses after the move to Nevada.

19. Because we are living in separate homes, our monthly utility and deposit costs are also higher than in Utah.

20. We have curtailed our involvement in religious activities as well as public statements out of fear that we could be charged at any time.

21. My children and I have faced repeated comments about how we are defined as criminals under state law and how the prosecutors are still considering criminal charges against us.

22. We have had to take steps to prepare for any possible arrest to be sure that our children are protected and taken care of if the state decides to move forward with charges.

23. We literally live day to day without knowing whether our family will be destroyed by a decision of some prosecutor in Utah to charge us.

24. The stress has had a pronounced impact on our children and myself in loss of sleep, stress, and uncertainty.

25. The impact on our reputations, income, and religious practices have been severe and unabated, particularly after prosecutors went public with statements that they would not be deterred in any way from criminally charging us due to our move to Nevada.

26. We have struggled with great difficulty to protect our children while trying to teach them our faith despite our separation for our religious community in Utah.

27. If this law were found unconstitutional and this threat lifted from our family, we would feel free to finally return to Utah and would certainly resume our open participation in our religious community.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 17th day of October 2011 in Las Vegas, Nevada.

*Janelle Brown*

Janelle Brown
9433 Deer Lodge Lane
Las Vegas, NV  89129