IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KODY BROWN, MERI BROWN, JANELLE BROWN, CHRISTINE BROWN, ROBYN SULLIVAN,<br><br>Plaintiffs,<br><br>v.<br><br>GARY R. HERBERT, MARK SHURTLEFF, JEFFREY R. BUHMAN,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11-CV-0652-CW<br><br>Judge Clark Waddoups |

# **INTRODUCTION**[1]

On February 3, 2012, the court entered a memorandum decision and order granting in part and denying in part Defendants' motion to dismiss on the grounds that Plaintiffs' claims lack standing. (Dkt. No. 31). The court held that while Plaintiffs had not alleged facts sufficient to allow a suit to go forward against Defendants Gary Herbert, the Governor of Utah, and Mark Shurtleff, the Attorney General of Utah, the alleged facts were sufficient to allow Plaintiffs standing to maintain their claims against Defendant Jeffrey Buhman, the Utah County Attorney. Now before the court is Mr. Buhman's motion to dismiss (Dkt. No. 46) on the ground that Plaintiffs' claims are now moot as a result of his office's recent adoption of a policy that residents of Utah County will not be prosecuted for violating Utah's anti-bigamy statute except

---

[1] For a more thorough review of the factual background of this suit, see the court's memorandum decision and order dated February 3, 2012. (Dkt. No. 31).

in cases where such a violation is committed in connection with some other violation of the law. For the reasons stated below, the court DENIES Mr. Buhman's motion to dismiss.

## DISCUSSION

### I. ARTICLE III MOOTNESS

"The constitutional mootness doctrine is grounded in Article III's requirement that federal courts only decide actual, ongoing cases or controversies. . . .  The central question in determining whether a case has become moot is whether the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (internal quotation marks and citation omitted).  To sustain jurisdiction over a federal case, "it is not enough that a dispute was very much alive when suit was filed . . . . The parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) (internal quotation marks and citation omitted).  Thus, "[w]hen intervening acts destroy a party's legally cognizable interest in the lawsuit, the federal courts are deprived of jurisdiction." *Mink v. Suthers*, 482 F.3d 1244, 1256 (10th Cir. 2007) (internal quotation marks and citation omitted).

"Merely stopping the complained of conduct ordinarily is not enough, however, to establish mootness." *Id*.  *See also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("'[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways.'") (internal quotation marks and citation omitted).  To show that a particular suit is moot as a result of a voluntary cessation of the challenged practice, a party asserting mootness has the "heavy

2

burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again . . . ." *Friends of the Earth, Inc.*, 528 U.S. at 189.

Although the burden of persuading the court that the challenged activity is not likely to be repeated is a heavy one, it is not insurmountable. "[I]n many circumstances it is obvious previously threatened conduct cannot reasonably be expected to recur." *Mink*, 482 F.3d at 1256 (citation omitted). On at least two occasions, the Tenth Circuit has found that a categorical announcement from a government attorney that no prosecutions would be brought under a particular statute was sufficient to moot a challenge to the constitutionality of the statute. *See Mink*, 482 F.2d at 1256-57 (opinion letter from prosecutor stating that the challenged statute could not be constitutionally applied to the conduct attributed to the plaintiff and that no charges would be filed against Plaintiff in the future was sufficient to moot challenge to statute's constitutionality); *Winsness v. Yocom*, 433 F.3d 727, 736 (challenge to constitutionality of flag burning statute moot because prosecutor had "categorically announc[ed] that his office [would] bring no prosecutions under the statute" and because recent Supreme Court precedent had made it clear that any future prosecutions under the statute would be futile).

In *Mink*, the Tenth Circuit identified three factors which it relied on to determine that the government attorney's assurance of non-prosecution established mootness: (1) the government quickly repudiated the actions initially taken against the plaintiff; (2) the government's promise of non-prosecution was made in sworn affidavits; and (3) the government's decision was based on controlling Supreme Court precedent, making future prosecutions unlikely. 482 F.3d at 1256. The court finds these factors helpful and will rely on them to determine whether Mr. Buhman's adoption of a policy not to prosecute residents of Utah County, including Plaintiffs, for violation

of Utah's anti-bigamy statute unless they have engaged in additional criminal conduct is sufficient to moot Plaintiffs' claims in this case.

The court finds that the first factor weighs against a finding of mootness in this case. The threat of prosecution that Plaintiffs complain of was alleged to have arisen in the fall of 2010 when prosecutors in the Utah County Attorney's office told the press that they were investigating Plaintiffs and that Plaintiffs had "made it easier for [them] by admitting to felonies on national TV." *See* Civil Rights Complaint 29 (Dkt. No. 1). The court determined, in an order dated February 3, 2012, that the alleged conduct of members of the Utah County Attorney's office was sufficient to give Plaintiffs standing to bring suit against Mr. Buhman to seek a declaratory judgment that the Utah anti-bigamy statute is unconstitutional. (Dkt. No. 31). Mr. Buhman then filed a motion to dismiss the case for mootness on May 31, 2012, accompanied by a declaration stating that his office had adopted the non-prosecution policy at issue in this matter. (Dkt. No. 47). The declaration was signed on May 22, 2012, and there is no evidence that the formal non-prosecution policy was adopted before that date. *See* Second Decl. of Jeffrey R. Buhman Ex. 1 (Dkt. No. 47). There is no evidence that notice of the change in policy was given to the public generally or distributed within the county attorney's office. The only apparent public notice was the filing of the motion with the attached declaration. The position taken in the motion was reported by various local news media sources.

Mr. Buhman's adoption of a formal non-prosecution policy happened over eighteen months after the alleged conduct giving rise to the threat of prosecution of Plaintiffs occurred. This cannot be considered a "quick repudiation" of the actions initially taken against Plaintiffs. Furthermore, Mr. Buhman's adoption of the new policy happened several months after his motion to dismiss Plaintiffs' claims on the grounds of standing had been denied by the court and,

also, after the claims against the state defendants had been dismissed because the court found that under the policy of the state attorney general's office there was no threat of prosecution. The timing of Mr. Buhman's adoption of the policy at issue suggests that the policy was not motivated by a belief that prosecution of Plaintiffs for violating Utah's anti-bigamy statute would be improper, but instead was motivated by a desire to prevent this court from reaching the merits of Plaintiffs' claims. *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010) ("[A] defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness, . . . while cessation that occurs late in the game will make a court more skeptical of voluntary changes that have been made.") (internal quotation marks and citation omitted). Mr. Buhman's strategic attempt to use the mootness doctrine to evade review in this case draws into question the sincerity of his contention that prosecution of Plaintiffs for violating this statute is unlikely to recur. *See cf. Harrell*, 608 F.3d at 1266 ("[W]here the circumstances surrounding the cessation suggest that the defendant is attempting to manipulate the court's jurisdiction to insulate a favorable decision from review, courts will not deem a controversy moot."); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309-10 (3d Cir. 2008) (university policy change did not moot case where evidence suggested policy change was done for the strategic purpose of evading review).

The second factor weighs slightly, but not decisively, in favor of a finding of mootness in this case. Mr. Buhman's motion to dismiss is supported by a formal declaration, made under the penalty of perjury, that the Utah County Attorney's office had adopted a formal policy of non-prosecution of Utah County residents that may be violating Utah's anti-bigamy statute without committing additional specified crimes. The declaration also expressly indicates that the criminal case opened against Plaintiffs for their alleged violation of the anti-bigamy statute has been closed and that no charges would be filed against them for bigamy in the absence of new

evidence that Plaintiffs were committing any of the crimes specified in the policy. *See* Second Decl. of Jeffrey R. Buhman Ex. 1, 4, ¶ 12 (Dkt. No. 47). Because Mr. Buhman's declaration is made under the penalty of perjury, the court gives it more weight than it would a statement made in other circumstances. The failure to give public notice of the change in policy, however, adds to the concern that the action was taken primarily for purposes of this litigation.

It should be noted also that in his declaration and in the adopted policy itself, Mr. Buhman reserves the right to prosecute individuals for violating Utah's anti-bigamy statute "(1) [w]hen a victim is induced to marry through their partner's fraud, misrepresentations or omissions; or (2) [w]hen a person purports to marry or cohabits with another person in violation [of the Utah anti-bigamy statute] and is also engaged in some type of abuse, violence or fraud." Second Decl. of Jeffrey R. Buhman Ex. 1, 3, ¶ 9 (Dkt. No. 47). Furthermore, Mr. Buhman has conceded that the policy at issue "cannot bind the future actions or policies of successor Utah County attorneys." Mem. Supp. Mot. to Dismiss 5 (Dkt. No. 47). Even though Mr. Buhman's adoption of a non-prosecution policy is supported by a formal declaration made under the penalty of perjury, the contents of the policy and the declaration leave open the possibility that Plaintiffs may be subject to prosecution for their continued violation of Utah's anti-bigamy statute in the future. Moreover, the policy does not reject the ability of Utah County to prosecute under the anti-bigamy statute. It reflects, at most, an exercise of prosecutorial discretion by the current county attorney not to prosecute unless another crime is also included. The county attorney does not repudiate that punishment may be enhanced if a defendant were convicted under the anti-bigamy statute and another offense. *See Utah v. Holm*, 137 P.3d 726, 774 n.29 (Durham, C.J., concurring in part and dissenting in part).

Like the first factor, the third factor identified by the Tenth Circuit in *Mink* weighs against a finding of mootness in this case. In both *Mink* and *Winsness*, the Tenth Circuit held that a prosecutor's promise of non-prosecution was sufficient to meet the burden of showing that future prosecution was unlikely to occur because the promise of non-prosecution was based on a determination that controlling Supreme Court precedent would make prosecution under the challenged statute futile. In *Winsness*, for example, the prosecutors submitted an affidavit to the court indicating that the enforceability of the Utah flag abuse statute was doubtful in light of the Supreme Court's decision in *Texas v. Johnson*, 491 U.S. 397, 420 (1989). 433 F.3d at 731. Similarly, in *Mink*, the prosecutor disclaimed an intent to prosecute the plaintiff after reviewing controlling Supreme Court precedent and concluding that prosecution would have been improper. 482 F.3d at 1254-55.

Mr. Buhman has not indicated what the reasoning is behind the newly adopted non-prosecution policy at issue in this case. His declaration merely states that, to his knowledge, this was the first occasion that the Utah County Attorney's office had to decide whether it would bring charges against someone in Plaintiffs' position for violating Utah's anti-bigamy statute and that, upon contemplation of the circumstances, a decision was made not to prosecute Plaintiffs and to implement a non-prosecution policy. The declaration does indicate that the policy is intended to "prevent the future prosecution in Utah County of bigamous marriages entered into for religious reasons," *see* Second Decl. of Jeffrey R. Buhman Ex.1, 3, ¶ 10 (Dkt. No. 47), but it does not explain why the office determined that such prosecutions should be avoided. Neither Mr. Buhman nor his counsel has cited any Supreme Court caselaw to show the court that the policy was necessary to avoid bringing an unconstitutional suit against Plaintiffs, and it is not clear what caselaw they would cite to show that such a prosecution would be futile.

7

Furthermore, Mr. Buhman's declaration clearly indicates that he believes the statute could be properly enforced, if the prosecutor exercises his discretion to do so, against an individual who violates Utah's anti-bigamy statute when the individual is also committing some other crime specified in the policy. *See* Second Decl. of Jeffrey R. Buhman Ex.1, 3, ¶ 9 (Dkt. No. 47). He has also made no indication that he is abandoning his defense of the constitutionality of the challenged statute. Mr. Buhman's continued defense of the statute makes it difficult to conclude that there is no reasonable expectation that Plaintiffs would be prosecuted under the statute in the future. *See DeJohn*, 537 F.3d at 311 ("'[H]ere Temple's timing of the policy change, as well as its continued defense of its former policy, do not meet the formidable burden of demonstrating that there is no reasonable expectation that it would reimplement its former policy.") (internal quotation marks and citation omitted).

While it may be the case that Mr. Buhman believes that prosecution of Plaintiffs would be inappropriate in this circumstance, there is no reason to believe that such a determination is anything beyond an exercise of prosecutorial discretion that could be easily reversed in the future by a successor Utah County Attorney, or by Mr. Buhman himself, if he should change his mind. As a result, Mr. Buhman's adoption of the non-prosecution policy at issue in this matter is not sufficient to establish that future prosecution of Plaintiffs is unlikely to recur. Because Mr. Buhman has failed to meet his burden in this respect, the current case continues to be live for purposes of Article III jurisdiction.

## II. PRUDENTIAL MOOTNESS

Even when a case is not moot in the "strict Article III sense," the controversy may be "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Southern*

8

*Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Prudential mootness has particular applicability where the relief being sought is an injunction against the government. *Id*. While the central inquiry is essentially the same under the Article III and prudential mootness doctrines—"have circumstances changed since the beginning of the litigation that forestall any occasion for meaningful relief," *Southern Utah Wilderness Alliance*, 110 F.3d at 727 (citation omitted)—a remedial promise may be sufficient to bring a case to an end as a matter of equity, even if it may not be enough to kill a case constitutionally. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012).

A remedial commitment made by one of the "coordinate branches of the United States government" bears special gravity when determining whether to find a case prudentially moot. *Id*. at 1211. This is not only because government promises are generally trustworthy, but because "affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources." *Id*. Refusing to find a case prudentially moot when a government entity makes a remedial commitment also discourages the other branches of government from seeking to resolve a dispute that is currently pending in court. *Id*.

In *Winzler*, the Tenth Circuit held that a products liability suit brought against Toyota was prudentially moot when Toyota voluntarily announced a nationwide recall to repair the problem alleged in the suit. According to the court, by initiating the recall, Toyota invoked a federally regulated[2] remedial scheme that provided the plaintiff with all the relief sought in the suit. The court held that because the remedy invoked by Toyota was enforced by a coordinate

---

[2] The recall process was overseen by the National Highway Transportation Safety Administration, "an agency of the Department of Transportation that can issue stiff fines if the company fails to carry out the recall to its satisfaction." *Winzler*, 681 F.3d at 1209.

branch of the government, there was "not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits." *Id*. Allowing the case to go forward on the merits would duplicate the efforts of the National Highway Transportation Safety Administration ("NHTSA"), waste finite public resources, and might "invite inter-branch confusion and turf battles over the details of carrying out an agreed objective." *Id*.

The immediate case can easily be distinguished from the circumstances of the *Winzler* case. In *Winzler*, the remedial scheme Toyota invoked had been established long before the suit had ever been filed and gave the plaintiff all the relief she sought. The NHTSA recall scheme was not established to give specific relief to the specific plaintiff in the *Winzler* case, and it was not established with the specific purpose of allowing Toyota to evade court review. Instead, the recall scheme was specifically designed to provide the kind of relief that the plaintiff in *Winzler* sought, and when it was invoked, there was no additional relief that the court could grant.

In contrast, Mr. Buhman's non-prosecution policy was implemented more than eighteen months after the alleged conduct that gave rise to this suit occurred. As discussed above, the timing of the policy implementation, lack of any public notice, and lack of reasoning given for adopting the policy suggest that the policy was implemented, not to provide a remedy to Plaintiffs in this case, but instead to evade review of Plaintiffs' claims on the merits. Moreover, the policy implemented by Mr. Buhman does not provide Plaintiffs with all the relief they are seeking. It has already been established that the policy at issue is insufficient to alleviate the risk that Plaintiffs will be prosecuted or threatened with prosecution for their violation of Utah's anti-bigamy statute in the future. Plaintiffs are seeking a declaration from the court that the statute is unconstitutional and a permanent injunction against enforcing the statute against them "on the basis of their consensual plural family association." Civil Rights Complaint 39 (Dkt. No. 1).

Plaintiffs are also seeking relief under 42 U.S.C. § 1983 for injury they claim to have suffered because of threats of prosecution. The policy of Mr. Buhman's office falls far short of providing Plaintiffs with all the relief they seek.

Because this case can be easily distinguished from the circumstances in the *Winzler* case, and because the concerns presented to the court in *Winzler* are not sufficiently present in this case to warrant a finding of prudential mootness, the court will not rely on the prudential mootness doctrine to allow Mr. Buhman to evade review of the merits of Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, the court hereby DENIES Defendant Buhman's motion to dismiss on the grounds of mootness. (Dkt. No. 46). On July 2, 2012, the court issued a stay on further proceedings on Plaintiffs' motion for summary judgment and Defendant's cross-motion for summary judgment. (Dkt. No. 64). The stay is now LIFTED. Plaintiffs may, in their discretion, file a reply memorandum to Defendant's memorandum opposing Plaintiffs' motion for summary judgment on or before August 31, 2012. Plaintiffs should also file a memorandum opposing Defendant's cross-motion for summary judgment on or before September 14, 2012. Defendant may then, at his discretion, file a reply memorandum on or before September 28, 2012.

DATED this 17th day of August, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge